## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Donna A.,

                                          Case No. 20-cv-02109 (NEB/HB)

                Plaintiff,

v.                                        **REPORT AND RECOMMENDATION**

Kilolo Kijakazi, Acting Commissioner
of Social Security,

                Defendant.

HILDY BOWBEER, United States Magistrate Judge

        Pursuant to 42 U.S.C. § 405(g), Plaintiff Donna A. seeks judicial review of final

decisions by the Commissioner of Social Security denying her applications for Disability

Insurance Benefits and Supplemental Security Income.  This matter is before the Court

on the parties' cross-motions for summary judgment [ECF Nos. 26, 28], which were

referred to the undersigned for the issuance of a report and recommendation pursuant to

28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1.  For the reasons set

forth below, the Court recommends that Plaintiff's motion be denied and the

Commissioner's motion be granted.

## I.    BACKGROUND

### A.    Procedural Background

        On October 12 and 18, 2017, Plaintiff filed applications for Disability Insurance

Benefits (DIB) and Supplemental Security Income (SSI), respectively, alleging disability

beginning January 1, 2014.  (R. 263, 267[1].)  Both claims were denied initially on

December 19, 2017, and upon reconsideration on March 23, 2018.  (R. 123, 144, 158,

188.)  Plaintiff requested a hearing with an Administrative Law Judge (ALJ), and she and

a vocational expert testified before the ALJ on October 7, 2019.  (R. 42.)  The ALJ found

her not disabled on November 19, 2019.  (R. 7.)  The Appeals Council denied Plaintiff's

request for a review without substantive analysis on July 31, 2020.  (R. 1.)

B.    Relevant Records

The Court will recount the record evidence only to the extent it is helpful for

context or necessary for resolution of the specific issues presented in the parties' motions.

Plaintiff argues that the ALJ erred by failing to include standing and sitting limitations in

Plaintiff's residual functional capacity (RFC)[2], (Pl.'s Mem. at 30 [ECF No. 27]), so the

Court focuses on the records pertinent to that issue.

1.    Plaintiff's Medical and Functional Records

The Court's review focuses on records about Plaintiff's spine, shoulders, and legs

relevant to her sitting and standing ability.  Plaintiff submitted several thousand pages of

medical and mental health records from 2014 through 2019.

Throughout 2014, Plaintiff reported to her providers consistent back pain (R.

1286–88, 1290–92, 1320, 1365, 1571, 1675, 1677, 1691, 1693, 3464), ranging in pain

from 2/10 to 10/10 (R. 1299, 1571, 1675), aggravated by and limiting her ability to sit

---

[1]  The Court cites the Social Security Administrative Record as "R." and uses the
pagination that appears in bold in the lower right corner of each page.
[2] An individual's RFC measures the most that person can do, despite her limitations, in a
work setting.  20 C.F.R. § 404.1545(a)(1).

and stand (R. 1288–89, 1571). She noted on a pain questionnaire in December 2014 that the pain prevented her from standing or sitting for more than one hour or walking more than one mile (R. 3466). Her providers noted at times tenderness in her lumbar spine (R. 1676, 1678), or generalized pain (R. 1691, 1693), but sometimes no pain on examination (R. 1690, 1696, 1699). They prescribed pain medications, physical therapy, muscle strength and flexibility techniques, heat, and a TENS unit. (R. 1269, 1298.) Plaintiff experienced relief through the medications, physical therapy, heat, and the TENS unit. (R. 1279, 1281, 1285–86, 1571, 3464.) Plaintiff also reported neck and shoulder pain, aggravated by sitting and standing but relieved by medication and physical therapy. (R. 1229, 1268, 1286, 1342, 1571.) One provider noted neck pain on examination with spasms and reduced motion, which Plaintiff attributed to anxiety from a cooking competition she joined in her culinary school (R. 1268), but providers mostly noted no pain on examination (R. 1283, 1344, 1676). Providers also noted one instance of edema in Plaintiff's feet (R. 1306), and one instance of hunched, painful gait when rising from sitting (R. 1365), but otherwise noted no gait or edema concerns (R. 1257, 1571, 1575, 1676, 1690, 1699).

Plaintiff had similar consistent reports of back pain throughout 2015, ranging in pain from 6/10 to 8/10. (R. 1381, 1384, 1390, 1404, 1413, 1571, 1675, 1677, 1691, 1693, 3422, 3429, 3440.) She reported sitting, standing, and daily activities aggravated it (R. 1380, 1571, 3422, 3429, 3440), and it interfered with sleep, work, and daily activities (R. 3422, 3429, 3440). Her providers noted at various times tenderness in her lumbar spine (R. 1676, 1678, 3423, 3431, 3442), reduced range of motion (R. 3423), pain with

extension and flexing (R. 3423), tenderness in her cervical spine (R. 3431), and generalized spine tenderness (R. 1397, 1691, 1693), but at other times no indications of pain (R. 1404, 1690, 1696, 1699).  An MRI of her spine revealed spondylosis in her cervical spine with moderate disc bulging encroaching on her spinal cord.  (R. 1386, 1834, 3431.)  Her providers prescribed a back brace and provided pain management injections in her spine, and continued with pain medications.  (R. 1820, 3427, 3433, 3435.)  Plaintiff reported that pain medication, heat, the TENS unit, and physical therapy relieved the pain, and at least in February 2015 she was able to work out at a gym to address the pain. (R. 1380, 1404, 1416, 1571, 3429.)  But in at least one other appointment she reported her medications did not control her pain.  (R. 3442.)  Plaintiff also reported neck pain and shoulder pain several times in 2015 (R. 1384, 1404, 1571, 1819, 1827, 3423, 3441), and explained in one medical appointment that the pain was aggravated by sitting and standing, but relieved by pain medication (R. 1571).  Aside from a couple of instances of mild edema in her lower extremities (R. 1392, 3441), her providers consistently noted no edema (R. 1382, 1386, 1416, 1571, 1575, 1676, 1690, 1699), normal gait (R. 559, 1820, 3431), and normal motor strength in her lower extremities (R. 3431, 3442).

Plaintiff continued to report back pain in 2016, ranging in intensity from 5/10 to 8/10.  (R. 1415, 1484–85, 1498–99, 1500, 1512, 1535, 1539, 1545, 1792, 1804, 2525, 3388, 3392, 3395, 3397, 3400, 3406, 3409, 3419.)  She reported the pain was aggravated by sitting and standing, and that it interfered with sleep, work, and daily activities.  (R. 3400, 3409, 3419.)  Her providers variously noted spasms in her cervical spine (R. 1484,

1504–05, 1557, 1564, 1568), tenderness in her cervical spine (R. 1557, 1564, 1568, 1808, 3393, 3402, 3411), tenderness in her lumber spine (R. 1557, 1569, 1808, 3402, 3411, 3420), spasms in her lumber spine (R. 1485, 1512, 1557, 1569), reduced motion (R. 3420), pain with extension and rotation (R. 3420), kyphosis in her thoracic spine (R. 1485, 1504–05, 1557, 1569), spasms in her thoracic spine (R. 1569), and tenderness in her thoracic spine (R. 1808, 3402, 3411.) Her pain management providers pursued a regimen of radiofrequency ablations and pain injections. (R. 1787, 1792, 1814, 3386, 3395, 3397, 3407, 3417.) Plaintiff in turn reported the pain was variously well-managed, improved, and relieved by stretching, heat, pain medication, radiofrequency ablation along her spine, pain injections, the TENS unit, the back brace, and a topical ointment. (R. 1375, 1498–99, 1789, 1800, 1804, 1815, 3399, 3400, 3402, 3406, 3408–09, 3412, 3418–19.) She reported that following a series of ablations, she was able to do activities and sit and stand without the increased pain that usually followed. (R. 1796, 1805.) There were several appointments when she reported no back pain. (R. 1504, 1522, 1545, 1552, 1557, 1568.)

Plaintiff also reported much more neck pain in 2016 than in previous years, ranging in intensity from 4/10 to 8/10 (R. 1535, 1539, 1545, 1552, 1557, 1563, 1568, 1658, 1808), including one report that it interfered with her sleep (R. 1563). But in several medical appointments she reported no neck pain. (R. 1512, 1518, 1522–23, 1528–29.) Her providers had one note of a tender neck on examination (R. 1568), but otherwise no notes about her neck. Plaintiff reported a couple of instances of shoulder pain at 7/10 or 8/10. (R. 1503–04, 1568.) Her providers noted tenderness a couple of

times on examination.  (R. 1485, 1504–05.)  She reported pain medication, topical

ointment, and stretching relieved it.  (R. 1503–04.)  Plaintiff reported instances of edema

in her lower extremities (R. 1492–93, 4536), which her providers verified on examination

(R. 1485, 1494, 4536.)  But her providers mostly noted no edema. (R. 1377, 1490, 1518,

1522–23, 1528–29, 1535, 1539, 1545, 1553, 1565, 1569, 1659, 1666.)  Plaintiff reported

no gait disturbance (R. 1489, 1492–93, 1498–99, 1503–04, 1512, 1518, 1522–23, 1528–

29, 1535, 1539, 1545, 1552, 1557, 1564, 1568), and her providers mostly noted normal

gait on examination (R. 1485, 1518, 1522–23, 1528–29, 1535, 1539, 1545, 1553, 1557,

2525), though there were a few notes of antalgic (weight-bearing pain) gait (R. 3402),

unsteady gait (R. 1817, 3420), and abnormal gait (R. 1659.)  Her providers also noted

normal lower extremity motor strength.  (R. 1808, 3393, 3402, 3411.)  Plaintiff did not

report muscle weakness.

     In 2017, Plaintiff continued reporting back pain ranging from pain scale 4/10 to

10/10 (R. 1432, 1441, 1451, 1465, 1888, 3336, 3338, 3340, 3345, 3379, 4174, 4181), that

was aggravated by sitting or standing (R. 3379), and interfered with sleep, daily

activities, and work (R. 1768, 3338, 3379).  Her providers noted numerous instances of

various back pain symptoms, including spasm in cervical spine (R. 1440–1441, 1459,

1465, 1713), tenderness in cervical spine (R. 1440–1441, 3340, 3381), reduced range of

motion in cervical spine (R. 1713, 3340, 3381), pain with rotation and flexing (R. 3340,

3381), tenderness in lumber spine (R. 1432, 1440–1441, 1451, 1465, 3340, 3381), spasms

in lumber spine (R. 1440–1441, 1456, 1459, 1713), reduced motion in lumbar spine (R.

3340, 3381), kyphosis in thoracic spine (R. 1456, 1459, 1465, 1713), and moderately

reduced range of motion in thoracic spine (R. 1713). A September x-ray found degenerative disc disease in her thoracic spine. (R. 1590.) Her pain management providers continued with pain injections and radiofrequency ablations (R. 1781, 3336, 3343, 3345), and other providers encouraged physical therapy and home exercise (R. 1768). Plaintiff reported relief and improved pain from stretching, heat, cold, medication, the back brace, the TENS unit, and radiofrequency ablation. (R. 1781, 3338, 3379.) She told her pain management providers in July 2017 that the radiofrequency ablations had provided greater than 50% relief from pain and improvement in activities over the past 15 months. (R. 3382.) In October 2017, she reported 75% improvement in pain after ablation and pain injections. (R. 1768.) There were also several appointments where she reported no back pain. (R. 1456, 1459, 1473, 1713, 1721, 1731, 1736, 1740, 1744, 1751, 4534.) Her providers also noted normal range of motion in several appointments. (R. 1876.)

Plaintiff also reported neck pain a few times during 2017 (R. 1713, 1888, 3338), though mostly reported none (R. 1432, 1451, 1456, 1459, 1465, 1473, 1721, 1731, 1736, 1740, 1744, 1751). She also reported at least once that rest relieved it. (R. 3338.) Her providers did not note any neck pain on examination. (R. 1474, 1595, 1599, 1888, 4534.) Plaintiff reported a few instances of shoulder pain, aggravated by sitting and standing, but relieved by medication, ointment, and stretching. (R. 1440–1441, 1455, 1473, 1721, 1731.) Her providers noted a few instances of tenderness. (R. 1459, 1466.)

Plaintiff also reported leg/hip pain during 2017 (R. 1432, 1448, 1450, 1477, 1888, 3340, 3379–3383), in part associated with a right foot fracture in July of that year that

caused ongoing pain at least into November (R. 1432, 1721, 1740, 1751, 1767).

Medication and ointment relieved the pain.  (R. 1477.)  Repeated x-rays during that time

noted normal healing and satisfactory alignment.  (R. 1589, 1600, 1601.)  Her providers

noted one instance of tenderness in her hips (R. 1751), pain in her knees (R. 3340),

several instances of compensated gait (R. 1432, 1731, 1740, 1751), and several instances

of edema (R. 1474, 1466, 1755), all associated with the fractured foot.  Her providers

otherwise noted normal gait and motor strength in her lower extremities.  (R. 1888, 1892,

1897, 1903, 1908, 1914, 1920, 1926, 1932, 3340, 3381.)  Plaintiff reported no edema (R.

1451, 1459, 1465, 1473, 1731), and her providers similarly noted no edema separate from

the foot fracture (R. 1448, 1470, 1595, 1599, 1731, 4534).

Plaintiff submitted a function report in November 2017.  She described her daily

activities including letting out her dogs, cleaning while her husband was at work, and

walking the dogs around the block.  (R. 331–316.)  She confirmed she could dress, bathe,

and feed herself, make sandwiches and heat up leftovers, do housework for 4-5 hours

depending on her level of exhaustion, cook 2–3 times a week dependent on her level of

pain and exhaustion, shop for groceries in a store, and regularly attend church and social

gatherings.  (*Id.*)  She did not do yardwork because she was regularly too exhausted and

needed her husband's help.  (*Id.*)  She reported her husband had to help dress her after

she broke her foot.  (R. 312.)  She reported that her impairments limited her standing and

sitting, she could only walk a couple of blocks before resting 10-20 minutes, and she used

a back brace all the time.  (R. 316–318.)

In 2018, Plaintiff reported back pain between 5/10 and 8/10, aggravated by sitting

and standing.  (R. 3330, 3332, 4111, 4154, 4502.)  Her providers noted tenderness in cervical spine (R. 3334), pain with extension and flexing (R. 3334), tenderness in lumber spine (R. 3334), and kyphosis in thoracic spine (R. 4122).  Imaging showed bony spurs in her cervical spine, moderate degenerative disease of mid and lower cervical spine (R. 4116, 4587), and hypertrophy in her shoulder joints (R. 4588).  A CT of her spine revealed loss of normal cervical lordosis, moderate degenerative disc disease at the C5-T1 level, and advanced left C7-T1 facet degenerative change.  (R. 3474.)  Her providers diagnosed her symptoms as consistent with cervical spine inflammation and radiculopathy.  (R. 1783.)  They continued with pain injections and nerve ablations, and encouraged Plaintiff to engage in a home exercise program.  (R. 1783, 3325, 3327, 3329, 3335, 4154.)  Plaintiff reported relief from the pain injections, heat, ice, and rest.  (R. 3323, 3324, 3326, 3330, 3332.)

In May 2018, Plaintiff reported for a physical therapy evaluation, the records of which note that she functioned independently with activities of daily living, functional transfers, and homemaking with ambulation.  (R. 3600–3602.)  They noted no concerns with lower extremity range of motion or strength, and a little difficulty with standing up and sitting down on a chair, moving from a bed to a chair, walking in the hospital room, and climbing 3–5 steps.  (*Id.*)

Plaintiff also reported neck pain and shoulder pain aggravated by lifting, through her providers noted few instances of any pain symptoms on examination.  (R. 3333, 4111, 4115–16, 4502, 4524.)  Her providers further noted good range of motion, negative concerns in x-ray, and recommended icing her shoulder, injection for pain, and lumber

support when sitting.  (R. 4116, 4123.)

Plaintiff reported hip/leg pain, mostly associated with a fractured right fibula in May 2018.  (R. 4071, 4154, 4160, 4501.)  Associated with the fracture, she reported mild pain with certain movements when walking, some compensated gait, wore a leg brace and used a cane, but showed steady improvement over time.  (R. 4071, 4078, 4085, 4089.)  Associated with the fracture, her providers noted on examination some pain in her right leg and knee (R. 4079), compensated gait on her right side (R. 4085, 4089, 4106), and a swollen right ankle and reduced right knee range of motion (R. 4085).  Imaging showed a moderate degeneration of her right foot joint and chronic deformity linked to her 2017 right foot fracture.  (R. 4589.)  But sonograph and imaging of her right leg showed progressive, unconcerning healing of the fracture, with some callus formation. (R. 4582–4585.)  One provider noted in August that her increased activity and weight-bearing were slowing her healing.  (R. 4079.)  In addition to the fracture, an x-ray and EMG showed degenerative joints, mild right hip arthrosis, and sensory neuropathy in her legs.  (R. 4162, 4490, 4493.)  Her providers diagnosed stable neuropathic pain (R. 4485), and recommended physical therapy and pain injections in her hip (R. 4156, 4162), with an added dose of pain medication for breakthrough pain at night (R. 4490).

Plaintiff also reported a couple of instances of gait disturbance (R. 4111, 4154), but reported at another visit that there was no disturbance in her gait. (R. 3333).  Her providers mostly noted no gait disturbance (R. 3334, 4489, 4498, 4505, 4912, 4926), but a few instances of antalgic gait, compensated gait, and abnormal diabetic foot exam with reduced sensory ability (R. 3334, 4112, 4162).  They mostly noted no edema (R. 4055,

4388, 4522), although they noted edema on at least one occasion (R. 4151). They prescribed treatment including daily walking in diabetic shoes and physical activities. (R. 4112.)

In 2019, prior to the hearing, Plaintiff reported back pain, neck pain, shoulder pain, and hip/leg pain. (R. 4019, 4481.) Her providers failed to note signs of back pain (R. 4524), but noted tender left hip with mild pain from motion, right hip muscles weak and moderately reduced range of motion, and right knee tender with mild pain from motion, (R. 4021). They prescribed icing and physical therapy for the leg and hip pain. (R. 4022.) Plaintiff reported at least one occasion of edema, which her provider confirmed. (R. 4021.) She also reported several instances of compensated gait and pain in her feet. (R. 4020, 4031, 4481). Her providers noted those same instances of compensated gait. (R. 4021, 4031.)

On August 20, 2019, Plaintiff saw Kimberly Aho, M.D., for a neurological consultation. Aho provided a medical opinion to the ALJ dated the same day, writing:

> [Plaintiff] has had two significant falls in the past two years, resulting in fractures. She has persistent weakness of her right fibula and was immobilized x months, resulting in muscle atrophy and weakness, so she is having a difficult time regaining strength in the right lower extremity. Moreover, she has persistent aching and neuropathic pain of the right lower extremity secondary to damage that occurred at time of fibular fracture. She can only walk about 20 steps before the right leg pain becomes more severe, so she needs to rest. Because of her abnormal walking due to overcompensation, she is having left hip/pelvis/back pain. She is on gabapentin for neuropathic pain medication. She also has chronic low back pain. She is treated with interventional treatments, such as injections and radiofrequency ablations by an interventional pain specialist.

(Tr. 4471-4472.)

### 2.    State Agency Reports

State agency medical consultants reviewed Plaintiff's applications initially and on reconsideration.  In December 2017, the initial consultant found she had severe impairments in the form of degenerative back and spine, major joint dysfunctions, obesity, a sleep-related breathing disorder, a gastrointestinal disorder, depression, anxiety, and a personality disorder, but she had at most moderate mental limitations, no disabling physical impairments, her statements about her symptoms were only partially consistent with the evidence including her activities of daily living, and her RFC allowed her to do a reduced range of light work occupations, so she was not disabled.  (R. 114–123, 135–144.)  The consultant specifically found Plaintiff could both stand and walk and could sit for about 6 hours in an 8-hour workday.  (R. 117, 138.)  On reconsideration in March 2018, another consultant made the same findings.  (R. 158–167, 178–187.)

### 3.    Hearing Testimony

Plaintiff's representative argued that she was not able to sit or stand for the time required for even sedentary level work due to pain from arthritis in multiple joints and neuropathic pain in upper and lower extremities.  (R. 45–46.)  Plaintiff testified that she daily took care of her service dog, and she cleaned when she could.  (R. 47–48.)  While she was housed in an alcohol abuse program, she did her own cooking and cleaning, helped her roommate with cooking and shopping, and cooked meals for other residents from recipes.  (R. 58–59.)

She described excruciating pain in her low back, periods of limited movement in

her neck, and sometimes inability to sleep for days due to neck and head pain. (R. 48.)

She conveyed that over-the-counter pain medicine eased her back pain to the point she

could get things done in the house. (R. 48.) She also described joint pain in her knee,

ankle, back, neck, and hands. (R. 49.) Her fingers tingled and sometime went numb, her

right foot hurt constantly from an old multi-bone fracture, and after walking 20-30 feet

her knee felt like it was rubbing on raw bone from an old break in her leg. (R. 49–50.)

She described hip pain like an ice pick through bone. (R. 51.) She took Gabapentin to

manage the numbness and pain. (R. 49.) She estimated that she could stand for 15

minutes or usually sit for 30 minutes before the pain overwhelmed her, and she usually

lay or reclined for half the day. (R. 52.)

### 4.    The ALJ's Determination

The ALJ follows a five-step sequential evaluation process for determining

disability. 20 C.F.R. § 416.920(a)(4). The five steps are: (1) whether the claimant's

work activity, if any, is substantial gainful activity; (2) whether the claimant has any

severe, medically determinable impairments meeting the duration requirement; (3)

whether one or more of those impairments meets or medically equals the criteria of a

listed impairment; (4) whether the claimant's residual functional capacity (RFC) allows

her to do past relevant work; and (5) whether the claimant's RFC and age, education, and

work experience allow her to adjust to other available work. *Id.* (a)(4)(i)–(v). If the ALJ

determines at any step that the claimant is disabled or not disabled, the ALJ halts the

evaluation. *Id.* (a)(4).

The ALJ found at step one that Plaintiff had not engaged in substantial gainful

activity since her alleged disability onset date.  (R. 13.)  At step two the ALJ found that

Plaintiff had the following severe impairments: degenerative disc disease of the lumbar

spine, degenerative disc disease of the cervical spine, degenerative joint disease of the

left hand and left hip, neuropathy, seizure disorder, major depressive disorder, borderline

personality disorder, and anxiety disorder.  (R. 13.)  At step three the ALJ found that

Plaintiff did not have an impairment or combination of impairments that met or medically

equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  (R. 14.)

> At the start of step four, the ALJ found that Plaintiff had the following RFC:

> [P]erform light work as defined in 20 CFR 404.1567(b) and
> 416.967(b) except she is unable to climb ladders, ropes, or
> scaffolds. She can have no exposure to potential hazards, such
> as moving machinery, unprotected heights, or operating a
> vehicle as part of the job requirements. She is limited to no
> work with fast paced production requirements, defined as work
> requiring more than frequent handling, fingering or reaching
> bilaterally. She is limited to no overhead reaching bilaterally.
> She is limited to performing simple routine tasks with routine
> workplace changes. She can have occasional interaction with
> coworkers, supervisors, and the general public.

(R. 149.)  The ALJ found that although Plaintiff's impairments could be expected to

cause her complained-of symptoms, her claims about the intensity, persistence, and

limiting effects of the symptoms were not entirely consistent with the objective medical

evidence and other evidence.  (R. 18–19.)  The ALJ reviewed at length Plaintiff's

medical records, including many related to her spine and lower extremities, from 2012

through 2019.  (R. 20–22.)  The ALJ also reviewed Plaintiff's treatment and medications,

finding her treatment for her spinal disorders consisted of routine and conservative

ablations, injections, and physical therapy, and had not required significant invasive procedures or hospitalizations. (R. 24.)

The ALJ recounted Plaintiff's reports and testimony about her daily functioning, finding her activities were not physically limited to the extent expected based on her claimed physical symptoms, including the ability to care for herself, care for her roommate while in alcohol treatment program, do light housework and cook for herself and her husband, and her walking and gym activity in 2017. (R. 24.)

The ALJ also reviewed the state agency medical consultants' opinions from the initial and reconsideration decisions, finding them generally consistent with the evidence over all but inconsistent with evidence, added after their opinions, that supported greater restrictions on environmental hazards and overhead reaching and lesser restrictions on postural and manipulative limits than they had found. (R. 25.) The ALJ also reviewed Aho's medical opinion, finding it unpersuasive because it was generally conclusory, appeared to be based largely on subjective reports of symptoms rather than objective medical evidence, and was inconsistent with Plaintiff's overall course of treatment and objective medical evidence. (R. 26.)

The ALJ found based on the evidence above that Plaintiff was limited to less than the full range of light work but did not mention any specific physical limitations based on her spinal and lower extremity issues, instead imposing physical limits based on her seizure disorder. (R. 26.) The ALJ concluded, "Further restriction is unwarranted as her subjective complaints are only partially consistent with the objective medical evidence and there is no treating medical source statement to the contrary to consider and weigh."

(R. 26.)

Based on the RFC and the vocational expert's testimony, the ALJ found Plaintiff capable of performing her past relevant work as an Assembler (Dictionary of Occupational Titles (DOT) 706.687-010).  (R. 27.)  The ALJ could have stopped the evaluation here, but based on arguments from Plaintiff's representative at the hearing and post-hearing evidence suggesting that she could not do the assembler job due to mental impairments, the ALJ proceeded to step five.  (R. 27.)  Based on the vocational expert's testimony, the ALJ found Plaintiff could work as a Merchandise Marker (DOT 209.587-034) – 311,000 jobs nationally; Production Assembler (DOT 706.687-010) – 4,000 jobs nationally; or Inspector/Hand Packager (DOT 559.687-074) – 5,000 jobs nationally.  (R. 28.)  The ALJ therefore concluded Plaintiff was not disabled.  (R. 29.)

## II.    STANDARD OF REVIEW

The claimant is disabled if "[s]he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The claimant bears the burden in the first four steps of the evaluation to prove she is disabled and cannot perform past relevant work.  *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995).  At step five, the burden shifts to the Commissioner to prove "first that the claimant retains the residual functional capacity to do other kinds of work, and second that other work exists in substantial numbers in the national economy that the claimant is able to do."  *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000).

Judicial review of the Commissioner's denial of benefits is limited to determining whether the ALJ made a legal error and whether substantial evidence in the record as a whole supports the decision. *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). "Substantial evidence in the record as a whole requires a more searching review than the substantial evidence standard." *Grindley*, 9 F.4th at 627; *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). A court must consider evidence that fairly detracts from the ALJ's decision. *Grindley*, 9 F.4th at 627. But a court may not "reweigh" the evidence or reverse the ALJ's decision "merely because substantial evidence would have supported an opposite decision." *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Id.* A court will disturb the ALJ's decision only if it finds from the evidence as a whole that the decision "falls outside the available zone of choice." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021).

A court must also ensure the ALJ adequately explained her findings and conclusions. The ALJ's determination must indicate which evidence the ALJ relied on and which she rejected, and her reasons for doing so, but she need not cite specific facts supporting specific findings and conclusions. *See Vance v. Berryhill*, 860 F.3d 1114, 1117–18 (8th Cir. 2017) (holding ALJ's findings at step four cured lack of elaboration at step three); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (holding that the ALJ need

not discuss every piece of evidence and not citing evidence does not indicate the ALJ did not consider it).  But "inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand" if they might change the outcome of the determination; an ALJ, not a reviewing court, must resolve those issues.  *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005).  *See also Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822–23 (8th Cir. 2008) (reversing when the ALJ's factual findings were insufficient for the court to conclude whether substantial evidence supported the determination); *David S. v. Saul*, No. 19-CV-3137 (ADM/LIB), 2021 WL 467348, at *3 (D. Minn. Jan. 25, 2021), *report and recommendation adopted*, 2021 WL 465281 (D. Minn. Feb. 9, 2021) ("a reviewing court cannot search the record to find other grounds to support the decision of the ALJ" when the decision does not provide that support) (cleaned up).

## III.    DISCUSSION

Plaintiff argues the ALJ's finding that she had the RFC to perform the sitting and standing requirements for light exertional work is not supported by substantial evidence, and she has sitting and standing limits that should be in the RFC.  (Pl's Mem. at 30.)  The Commissioner argues substantial evidence supports the finding.  (Def's Mem. at 7 [ECF No. 29].)

A claimant's RFC must be "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations."  *Kraus*, 988 F.3d at 1024 (8th Cir. 2021) (quoting *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015).)

The ALJ found that Plaintiff had the RFC to perform the full range of sitting and standing/walking required for light work.  (R. 18.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b).

> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

*Titles II & XVI: Determining Capability to Do Other Work - the Med.-Vocational Rules of Appendix 2*, SSR 83-10, 1983 WL 31251 at *6 (S.S.A. 1983).

In support of her argument, Plaintiff cites her testimony about sitting and standing limitations, objective medical tests and records indicating spinal degeneration and neuropathy in her lower extremities, her providers' observations of compensated gait and edema in her legs, Aho's medical opinion about her limited walking and standing, her record of treatments including the radiofrequency ablations, pain injections, and physical therapy, and the evidence of pain.  (Pl's Mem. at 30–36.)

Plaintiff argues cursorily that the ALJ failed to properly consider the evidence of pain as required by 20 C.F.R. § 404.1529.  (Pl's Mem. at 36.)  Plaintiff does not describe how the ALJ's analysis failed to satisfy the analytical process in the rule or identify the records the ALJ failed to properly consider.  The ALJ evaluated the intensity and persistence of Plaintiff's pain based on the objective medical observations and tests, the course of her treatment and pain management, Plaintiff's statements about her pain and her activities of daily living, and the medical opinions of the state consultants and ALJ. 20 C.F.R. § 404.1529(c)(4).  The ALJ found that the evidence was inconsistent with Plaintiff's claims about the intensity, persistence, and limiting effects of her pain, and her pain did not limit her ability to stand or sit at the level of light exertional work.  The Court finds that the evidence clearly indicates Plaintiff suffers from chronic back pain due to degenerating discs, contributing to neuropathy in her legs.  But her activities of daily living include walking her dogs, standing to cook meals, doing light house work, shopping in grocery stores, and attending social and church functions; she repeatedly reported pain relief through her course of pain injections, ablations, application of heat and cold, and pain medications; her provider's findings varied between compensated and normal gait; her spinal pain, though consistently present, varied in intensity, as did her demonstrated pain symptoms upon physical examinations; her lower motor strength was usually normal and she rarely experienced edema in her lower extremities; and hip and leg pain when at its worst was connected to fractured right foot and right fibula, both of which her providers noted were healing normally without any concerns.  The Court concludes that the ALJ's finding about Plaintiff's pain was supported by substantial

evidence in the record as a whole and complied with the rule.

Regarding the other evidence cited by Plaintiff in support of her standing and sitting limitations, she provides no arguments that the ALJ misinterpreted any records, missed record evidence that should be dispositive, or failed to resolve conflicts in the evidence that could change the outcome of the determination.  The ALJ considered all categories of evidence cited by Plaintiff, as described in the records section above. Though the ALJ did not cite every record Plaintiff cites, the ALJ's finding of no sitting or standing limitation was supported by the records in the determination, and it is not for the Court to reweigh the evidence.  Based on the records reviewed by the Court, the Court's discussion of those records in relation to Plaintiff's pain, and the ALJ's discussion of the records, the Court concludes that substantial evidence in the record as a whole supports the ALJ's finding that Plaintiff was capable of the sitting and standing requirements for light exertional work.  While the records cited by Plaintiff could support standing and sitting limits, the record as a whole could also reasonably support the ALJ's finding, so the finding was not outside the available zone of choice.  *Kraus*, 988 F.3d 1024.

## IV.    RECOMMENDATION

For the foregoing reasons, the Court respectfully recommends that:

1.  Plaintiff's Motion for Summary Judgment [ECF No. 26] be **DENIED**;

2.  Defendant's Motion for Summary Judgment [ECF No. 28] be **GRANTED**; and

3.  **JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 21, 2022                    *s/ Hildy Bowbeer*
                                        HILDY BOWBEER
                                        United States Magistrate Judge

## __NOTICE__

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).